Good afternoon, everyone, and welcome to the Ninth Circuit. Judge Bress and I want to welcome and thank our colleague, Judge Fitzwater. Thank you for making another trip out to the West Coast for this case. We have one matter on calendar for this afternoon, Punchbowl v. AJ Press. Counsel on video, can you hear us okay? You can give me a thumbs up. Great. And counsel for Punchbowl, you are here. All right, why don't you go ahead and come up to the podium, come up to the microphone here. Now, we're starting a little bit late today, so I want you just to kind of explain what happened. So, I had on my calendar that it was supposed to start at 3.30 instead of 3.00, and my apologies, I didn't realize the mix happened until literally 45 minutes ago. So, I'm sorry. Okay, well, very well, you know, I think you would have been late even if it was 3.30. So, going forward, judges don't like to be kept waiting. Please keep that in mind. I totally understand. And with that, why don't you go ahead and get started. Okay. So, we hear about the case of Punchbowl v. AJ Press, which does business as Punchbowl News and Punchbowl Press. As you are well aware, at the lower level of this case, which is a trademark infringement action, we lost due to application of something called the Rogers test. Rogers test is something that came out of the Second Circuit. It involves use of marks in expressive works. Our argument was that, and has always been, that we are, the defendant is not just using our mark Punchbowl, which is federally registered, as the name of a podcast or the name of an article or the name of any specific thing, but as the name of their brand. So, we argued that. We were not permitted discovery. We went to your court and were denied. And at the same time, the Jack Daniels case was pending, and the Supreme Court took it. Supreme Court very clearly held that the Rogers test, which is a limitation of trademark infringement, does not apply when a defendant is using a mark as a brand, as a source identifier, which has been our case the entire time. We haven't even been able to engage in discovery to show that, but the fact is, you can look at the defendant's website and very quickly see they're using it not just as a name of a podcast or something. They're using it as the name of a brand. So, if you're right about this, then the next step would be likelihood of confusion. So, you've had no discovery. Is that what you said? Yeah, that's right. Okay. What do you think discovery will show? What do you anticipate you'll be able to prove? Discovery will show that there has been confusion, that there has actually been confusion. People have confused my client with the defendant because they're using the exactly identical name, Punchbowl. That's what discovery will show, and we should be entitled to that and not limited by some doctrine that is really developed for the names of movies or shows or things like that. I mean, we haven't been able to engage in what we should be in this case. So, the other side, I think, argues you're trying to basically control the rights to just a word in the English language, a common word. How do you address that? Well, I mean, there are many, many thousands of words that are controlled by the Lanham Act as trademarks. I mean, think about it. I mean, Facebook, I'm thinking of lots of clients I've worked for. They are words that function as trademarks that tell you what you get as a product or a service. It doesn't have to be a made-up word like Google. It can be something like Michelin. It could be something like, think of what you buy every day. Those things that you buy are often identified by words, words that are not crazy. They have meanings, but the offer of the goods or services has actually developed trademark rights in those, and that relies you as a consumer to, upon, make your purchase decision. So, in this case, Punchbowl is not even directly descriptive or generic. Punchbowl is suggestive of something about my client's goods and services. It's a great trademark. And the other side decided they would take that use it for, and all this, by the way, is absent from discovery because we haven't been allowed to take discovery, but they use it not just for online newsletters, but for organizing conferences, for organizations, things that are very, very similar from what my client does. So, at the end of the day, you're faced with two identical marks. MR. GARRETT. Could I ask you a question? MR. LARSEN. Yeah. MR. GARRETT. Counsel. The argument that we haven't been able to take discovery also involves the concept of we have done a satisfactory job of pleading the claim. Is it your view that you have satisfactorily pleaded the claim? MR. LARSEN. Absolutely. If you look at our pleadings in this case, we have put into evidence copies of their website. And all you have to do is look at their website, and you will understand they're using Punchbowl as a brand, not as the name of one podcast or one article or one, like, anything. Like, we put that into evidence. And at this point, that's all we can do. So, discovery will show that they use this. This is their brand. It's their brand. And I think already what we've shown will prove to any court, anyone who looks at it, anyone who, like, reads the Supreme Court decision on this issue will understand this is what they're doing. They're using Punchbowl as a brand. And we can further explore that in discovery. And we will, I mean, if this court makes the right decision. But, yeah, I mean, we've done what we can do at the pleading stage. MR. LARSEN. So, your belief is that there is evidence out there suggesting that either consumers, when they are listening to or reading a report from Punchbowl about what's going on in Washington, D.C., that they would think that your company was producing this material? MR. LARSEN. Yes, yes. And not only that, I mean, what the other side does is they also put conferences together. They put meetings together called Punchbowl. My client's entire business is in part predicated on meetings and gatherings and things like that. And they call it Punchbowl. They have a registration for Punchbowl. And, yes, we actually don't just believe. We know there is confusion. And I think it was you. I'm sorry if it wasn't, but I remember arguing this before and someone said, well, Mr. Wilsey, you believe that you're just frustrated with the way the Ninth Circuit has applied the Rogers test. And I said, yes, I am, because I think that's wrong. I think it's wrong. And I think the Supreme Court has now told you it is wrong. The Rogers test only should apply when you're talking about expressive works like movie titles, song titles. We would not be filing this suit if this were about the other side using Punchbowl in the name of one column, the name of one podcast, or in an article. This never would have happened, but it's their entire brand. And the Supreme Court has now said, look, if you're using this as a brand, the Rogers test doesn't apply. In this circuit, the very well-established sleek craft factors should apply, which are, I mean, I've litigated a million times in this circuit, and I'm very familiar with the circuit with the sleek craft factors. It's a great test for trademark infringement. And that's what should apply in our case, not this limited Rogers doctrine, which came in the second. So one thing the Supreme Court said in Jack Daniels was that they acknowledged it was an expressive aspect to the toy. But in the Supreme Court's view, that expressive aspect of the toy could be relevant, not as a threshold, but later as part of likelihood of confusion. Do you agree that here any expressive interest that the defendants may have could also be relevant in the likelihood of confusion analysis that you want to have happen? No, it can be irrelevant. But what's really important to keep in mind is that the Supreme Court didn't limited its decision to parody. Like in that case, parody was an issue because the defendant was arguing that the dog toy was a parody of Jack Daniels. But the Supreme Court went way further than that and said, look, straight up, you cannot apply the Rogers test when someone, the defendant, is using something as a source identifier. And that's the situation in our case. We're not a parody case. They're not making parody of our trademark. But what they are doing is using it in a way to consumers in the same channel of trade, which is the internet, in a way that is likely to cause honestly, we might lose. If we go back to litigation, okay, it's up for a court to decide whether there's a likelihood of confusion, but that's what should be at issue. Whether there's a likelihood of confusion, you shouldn't cut it short by virtue of a test that is applicable to works of expression. And the Supreme Court has held that that doctrine should not apply to this case. Counsel related to that, is there any guidance that you think would be helpful for us to give to the district court? It would have been very easy for this panel after the decision simply to have said this opinion is vacated and this matter is remanded to the district court, consistent with Jack Daniels. And the district court wouldn't have any more guidance. But is there guidance you think that we could give? Yes. So as a first step, like in an ordinary case, we would start off with just the breadth of the scope. In this case, we could start by a remandment that says, let's engage in discovery to see whether they're using this as a source we're not using it as a source of doubt fire. I think that's a bit ridiculous. You can look at their website and see that's not the case, but you could say, hey, let's do three months of discovery to find out whether they're using Punchbowl as a source of doubt. I don't think it'll take three months. I think it will take two weeks to find that out. But that's the initial step. If we determine they're using Punchbowl as a source of doubt fire, and by the way, they filed trademark applications for Punchbowl. Like there's no way that you can better understand that they're using Punchbowl as a trademark than by the fact that they filed trademark applications. Do you think you need to amend your complaint? In other words, you pleaded this case under pre-existing law, which included Rogers. So, do you think you need to amend it? I really don't. I really don't. If you look at the complaint, it's the same. I mean, everything that we pled stands up today. It does. It's, I mean, when they responded by saying they were going to file a motion to dismiss based on the Rogers test, I honestly was shocked. I don't think we need to change our complaint at all. I mean, if the court wants to limit discovery to an initial phase where it's just to figure out whether they're using Punchbowl as a mark, a source of doubt fire, that's fine. We can do that very, very easily. I think that's a little bit of a waste of time. We should just get into this. I mean, the real issue is whether there's a likelihood of confusion. And like I said, we have evidence there has been confusion. They're using the same mark. They're using it online. What is the evidence? Emails that have been sent to my client that were supposed to be to their client and asking about subscriptions and renewals and things like that. And so there are people out there who think that they are us. And that's the heart of a trademark case. So, yeah. Now, I take it, and I guess this could be fleshed out in discovery, but it's one thing to get email addresses mixed up. It's another thing to think one company is another. So I'm assuming you would say in the discovery process, you anticipate showing that it's more than merely sending things to the wrong email address. It's completely true. It is not. I mean, just a mistaken email address does not support a trademark infringement case. I will concede that. The issue is whether people think the companies are associated with each other. And that is something that we need to take discovery on. And we haven't been allowed to. So there we have it. Unless I have any more questions from my colleagues, do you want to reserve your five minutes? Dr. Michael Lysakowski I will. Dr. Michael Lysakowski Okay. Dr. Michael Lysakowski Yeah. Dr. Michael Lysakowski Very well. Dr. Michael Lysakowski I probably won't need it, but yeah. Dr. Michael Lysakowski That's even better. All right. All right. Council on video, one second while why don't you sit up here in front of the, actually Council, sit in front on the Council's table. All right. And Council on the screen, you have the floor. Dr. Michael Lysakowski Thank you, Your Honor. May it please the court. I want to address quickly two things. Number one, what the VIP case holds and what it does not hold. And number two, why discovery in this case is not appropriate and remand is not appropriate. I also want to briefly, before I even start, just quickly correct a few things that came up in opposing Council's argument. Because, for example, he said that the marks are identical. This court has already found that's not the case. We do not have a mark of Punchbowl. The marks are Punchbowl News, Punchbowl Press. And yes, my client applied and was granted without any opposition from opposing Council's client trademarks in Punchbowl News and Punchbowl Press, but not in Punchbowl. It's not the identical mark, and that's not what is at issue. There also was some discussion about the pleading stage. I think it's important to keep in mind that this is a case where summary judgment was granted, and the relevant standard is Rule 56D. And I think that that's a very important point. Also, of course, again — Dr. Michael Lysakowski Right, but that was done under Rogers. Dr. Michael Lysakowski It was done under Rogers, and as I will get to in a moment, I believe Rogers is still controlling in this case. VIP created — VIP, according to the Supreme Court, was a narrow ruling. And for the reasons that I'll get into in a moment, VIP does not apply to this case. If VIP does not apply to this case, then circuit precedent compels the application of the Rogers test, and the opinion that's already been written is the one that should issue. And there should be no discovery, because Rogers is appropriate. But the other thing I wanted to correct was the assertion of identical use. Because again, this Court, in affirming summary judgment, has already held that that's not true. There is not identical use. The uses are quite different. The Court's opinion affirming summary judgment shows the different images, shows the logos, shows that we're using punchbowl news and punchbowl press — not punchbowl, a common English-language word. And parenthetically, opposing counsel's comment that Michelin and Facebook are common English-language words is not true. Those are trademarks. Punchbowl, a punchbowl is in the dictionary. That is actually a common English-language word. But in any case, these are not identical uses. They are used in conjunction with a logo that shows the inverted capital. So it's very clear what type of punchbowl we're talking about. It's used in conjunction with — So what are you asking us to do then? Because some of these arguments could be arguments made against the likelihood of confusion, to make these arguments and say, see, they're different. They're using them in different ways. Therefore, no likelihood of confusion. But the District Court didn't reach that, and we didn't decide that either in our past opinion. Right, that's correct. And when you're dealing with First Amendment considerations, Supreme Court precedent and precedent from the circuit make clear that there needs to be a narrow application of exceptions to the First Amendment and that First Amendment rights need to be broadly construed. There's also ample Supreme Court case law that when First Amendment rights are at issue, causing a party to go through extensive litigation, remanding a case so the party has to go through likelihood of confusion, that that itself is a harm. Let me jump though to why VIP doesn't apply to this case and therefore why under circuit precedent this case is controlled by Rogers and by existing precedent. So what the Supreme Court held in VIP, and the Supreme Court in the majority opinion was very clear, it's a narrow ruling. It held that a defendant's use of a plaintiff's trademark, not simply use of a trademark, takes you outside Rogers v. Grimaldi. Counsel for appellant talked about source identifier. The issue is not whether Punchbowl News and Punchbowl Press is a source identifier or a trademark. The issue is whether Punchbowl News or Punchbowl Press are using appellant's source identifier, Punchbowl. And this court has already held, based on summary judgment, that that's not the case. In fact, this panel has already affirmed that Punchbowl News is not using Punchbowl as a bare source identifier. Let me go through quickly several- It is using it as a mark, right? That was what the Supreme Court was talking about in Jack Daniels. No, we are not using Punchbowl as a mark. We're using a common English language word, Punchbowl News. If you look at the mark, you look at it in combination with the logo, you look at it in combination with the credo, you look at it in combination with the repeated reference to the founders. It's very clear that this is not a case where a defendant is using a plaintiff's source identifier. If that were the case, then Rogers v. Grimaldi would not exist at all. Isn't that true? You're using it as a designation of source for your product? Not plaintiff's mark, we're not. We're using Punchbowl News- That's your merits theory, right? I understand that. You don't think you're using their mark. They seem to have a theory that you are, and they claim that will be sorted out in discovery. That argument would resonate if the Supreme Court had abrogated Rogers, but it didn't. Because Rogers v. Grimaldi, you had the use of a trademark, Ginger and Fred, which incorporated the plaintiff's trademark, Ginger Rogers. And the Supreme Court did not abrogate Rogers. They said, whether Rogers applies or not is something left for another day. We're simply creating an exception. And so the problem with appellant's argument is that it assumes that Rogers has been abrogated. In almost every Rogers v. Grimaldi case, you have instances where there's a title of a book, a title of a film, a title of a video. And the Supreme Court in VIP did not say merely that if you use something as a trademark, then suddenly Rogers v. Grimaldi doesn't apply. First Amendment doesn't apply. They couldn't because Rogers v. Grimaldi itself involved use of a trademark. What they said is when a defendant uses a plaintiff's trademark, and let me give five examples from the court opinion, because I think it's very instructive, because the Supreme Court in the opinion actually alternates between referring to use of a trademark and use of another's trademark. And so there is some language in the Supreme Court opinion that could be confusing, where it might seem that the plaintiff is saying, well, if there's use of a trademark, then you're outside of Rogers v. Grimaldi. That would be too broad a ruling. And I think it's very clear, as I'm going to explain in a moment, by going through the opinion that when they use shorthand reference of a trademark, they're talking about another's trademark. So first of all, meaning your argument is limited to a parody or an outright express borrowing? No, no, no. What the Supreme Court has held is that when a defendant uses a plaintiff's trademark as its own source, sorry, as a source identifier of the plaintiff's mark, then you are outside of Rogers v. Grimaldi. And we see that at several places in the opinion, starting at 151, when the Supreme Court cites approvingly the district court ruling in VIP. And it says in the court's view, when another's trademark is used for source identification, as the court thought was true here, the threshold Rogers test does not apply. In other words, it's not when any trademark is used. It's not when the defendant is using a trademark. It's when they're using plaintiff's trademark. Similarly, at page 156, the Supreme Court clarified what it means by source identification. Freighting on the goodwill of the trademark owner. And isn't that their argument here? I mean, I get that you disagree with that. You think you're not using their mark. Their position is that you are. So I don't see what this really gets as far as getting out of Rogers. It seems to me you need a more robust argument to get out of VIP than this. Well, I think that would be true if you were considering a motion to dismiss, but you're ruling on summary judgment. Both sides presented evidence. Again, these are alleged online uses. The uses that exist are on the internet. And I'll get to discovery in a moment. But there's ample evidence presented by both sides. And this panel has already affirmed that Punchbowl News is not using Punchbowl as a bare source identifier, not based on the allegations of complaint, but based on a robust amount of evidence presented by both sides. And I think that that's a very important point. At page 157, the Supreme Court says the kind of confusion most likely to arise is when someone uses another's trademark. Again, that's very important. It's not use of a trademark. It's use of another's trademark. At page 159, the trademark law generally prevails over Hearst Amendment when another's trademark or confusingly similar mark is used without permission as a means for source identification. This panel has already determined that that's not the case here. And you made that determination based on evidence. And so that's very important. This interpretation also is consistent with the way district court ruled just recently, just about a month ago, in the Hara v. Netflix case, 2023 U.S. District Lexus 148717, Central District of California. In footnote one, they construed VIP exactly the way we did and said that unless the defendant is using the plaintiff's mark, it's not just that the names are the same. Unless the defendant is using the Rogers v. Grimaldi controls. And therefore, under Ninth Circuit precedent, that's what we are, that's what we're dealing with. Footnote one, here the alleged infringement does not identify plaintiff as the source of the series. Therefore, controlling Ninth Circuit law requires the application of the Rogers test, citing to Brown. And I think that that is an important point. Even the Supreme Court's holding at page 153 is also clear that they're talking about when a defendant uses the plaintiff's mark. Without deciding whether Rogers has merit in other contexts, we hold that it does not. When an alleged infringer uses a trademark in the way the Lanham Act most cares about as a designation of the source of the infringer's own goods. And now the typical Rogers v. Grimaldi case is where you have a defendant using a plaintiff's mark in a non-trademark sense. And that's why there is this parallel that the court talks about, about non-trademark use. Is that Rogers v. Grimaldi or is it fair use? Here, there's no use at all. Both sides have briefed the issue. There's evidence. And this panel has found that there is no use as a source identifier, which brings us to discovery. Because the kind of discovery that the appellant is seeking is discovery that would be relevant to the likelihood of confusion, not relevant to the Rogers v. Grimaldi case. How is it not being used as a designation of source when this is the term that's used all over your client's website and publications and everything else? Okay. Punchbowl News is being used as a designation of my client's source. It's not being used as a designation of the plaintiff's source. In the quote that I gave earlier from VIP, the Supreme Court makes clear when they're talking about source identification, what they're talking about is when a defendant uses a plaintiff's mark as a source identifier to refer back to the plaintiff. That's not here. This panel has already found that. Based on evidence that was briefed, the additional discovery that the appellant wants would not change that analysis. They've asked for discovery on awareness of the mark or intent. That's simply not relevant to the test here of whether the defendant is using the plaintiff's mark as a case here. If you withdrew the word news from your publication and didn't have the upside down punchbowl, just said punchbowl, would your position be different as to whether you're using as a source identifier? Yeah. I mean, well, it might be, except again, we're dealing with a common English language word, punchbowl, not Facebook or Michelin. And there are hundreds, probably thousands of punchbowls in use, punchbowl, bowling alley, an array of things. And you get into very tricky First Amendment areas when you allow a trademark owner that has a trademark in a common English language word for a particular narrow category of goods and services to be able to sue any other user of that right. And that's why the First Amendment issues are so prominent here. But certainly in this case, there is no question based on the evidence that was presented, based on what this panel has already held, there is no evidence of that. You keep saying this, right? You keep saying we've already held it. We did not hold that. We did not hold that because that case involved a totally different body of law that the Supreme Court then has made major changes to. That's why we're having the case re-argued. So if it was so easy that the prior opinion dismantled that and said that, we wouldn't be here. So I think we have to engage on a much deeper level with what the Supreme Court has done in this area of law. It completely revamped this entire area. It issued a narrow decision, only narrow in the sense it didn't completely eradicate Rogers altogether. That's the only reason in which it's narrow. So I don't think what's happened before, the summary judgment, the conversion to summary judgment, all of that was based on a world in which Rogers clearly governed this case. And now that's a question. Well, I think there is a threshold question under VIP of whether AJ Press is using Plaintiff's Mark as a source identifier. I do think that based on the evidence the panel had concluded it hadn't. I understand that we're in a different world, but the world we're in is one where VIP creates an exception. It may be a big exception in the broader world, but when you're talking about a company involved in news gathering, a core First Amendment use, using a common English word, I don't see it that way. Well, yeah, that's always what I understood the heart of your argument to be from your supplemental brief. Not so much news versus, you know, the changing of words here or there in the name, but that the fact is that this was a common use, common word, and what are the limits, if you will, on the use of a common word? And where does the First Amendment analysis latch on? Does it latch on at the beginning of this inquiry as Rogers would have had it, or does it latch on perhaps somewhere later? Correct. And I think under Ninth Circuit precedent, under Supreme Court precedent, whenever you're dealing with First Amendment rights, because those are so important, those typically, where possible, are addressed at the outset. Similar in anti-SLAPP cases, it's been similar in, you know, Friedman v. Merrill. So how do you reconcile this with VIP? Because there were expressive interests at play in that case as well. The Supreme Court acknowledged that. They said, well, partly this is expressive. Well, sure, it's expressive, but it's also a dramatically different case from this one. It's a case where you had a defendant that clearly and unambiguously was using a variation of the plaintiff's mark that had also registered an array of other variations of famous marks as its own commercial product. There's no comparable evidence in this case. I mean, VIP is a much easier case, you know, in finding that Rogers doesn't apply. Their expressive elements. And the Supreme Court said in that instance, the likelihood of confusion test adequately addresses it. But here, you don't have any of that evidence. You have no evidence whatsoever that there's similarity, that there's an attempt to trade on the brand. You know, it's important, as opposing counsel mentioned, that these are both online uses. The evidence is all there. We presented it. You know, I understand that, you know, an appellant would remand and would like discovery. Certainly, if there is remand and discovery, it should be very narrowly limited to the single question of whether A.J. Press is using plaintiff's punchbowl as a source identifier, not using just the common English language word punchbowl. But again, because of the importance of the First Amendment issue and because of the fact finding that's already taken place on summary judgment based on ample evidence before the court and the court's affirming that punchbowl news is not using punchbowl as a bare source identifier, it seems like to the extent that there is a new threshold consideration, that consideration has already been addressed based on this panel's prior holding. And then to get to discovery, you'd have to look at 56D. And so then the question is, is under 56D, you'd have, which is, again, abuse of discretion standard, you'd have to find that there are facts that were unavailable and that would establish an outcome. I mean, I mean, what discovery took place here? What discovery took place here so far? There was no discovery. There was ample submission by each side of evidence available online. We presented ample evidence of the plaintiff's use online. They presented ample evidence of our use. The courts compared the websites, they compared the uses, and they found that under Rogers, that we were entitled to judgment. And this panel did the And again, even if appellant is correct, even if intent would make a difference, even if, like, what was intended makes a difference, the reality is the marketplace. The Lanham Act is not concerned with people's thoughts. The Lanham Act is concerned with consumer confusion, with the actual marketplace. The marketplace, when you're dealing with two online companies, is what's on the website. All of that evidence is before the court. And although appellant's counsel has said the uses are identical, that's not true. And this court has found it's not true. It's different colors, different logos, different uses. There is no argument based on what consumers in the market see that AJ Press is using Punchbowl's mark as a source identifier. There's no evidence at all. And so under 56D, we submit that additional discovery isn't going to change that outcome. Okay. Unless my colleagues have any further questions for counsel, seeing or hearing none. Thank you very much, counsel, for your argument. All right. You have some time in rebuttal. So opposing counsel keeps talking about there's no evidence. There's no evidence because we've never been permitted to actually engage in discovery and find evidence. We have put in our website into play. That's all we can do right now. I mean, the fact that they're relying on the argument that the use of words like news and press differentiate the marks is, I don't think, compelling because those are generic terms. I mean, the marks at play are that's it. They use Punchbowl News, Punchbowl Press. We use Punchbowl. Those are the same marks. We can show in discovery. We can provide evidence of actual confusion. And I should just make a record of this that like we're not even required to show actual confusion to prevail on a trademark infringement claim. We are required to show there's a likelihood of confusion. So we can show that like the typical consumer of and the lower court, by the way, held that moms are not likely to be concerned with news. There was a position that that way. We will show that's not true. Yeah, that would not apply in my house. Yeah, yeah. It's not true in my house either. And we'll show that's not the case. But all of this these are things that need to be developed during discovery. And I don't just want us to be able to engage in discovery. I think we'll win. I think we will show that people are likely to be confused. And the fact that the lower court concluded this case without even allowing us to engage in discovery, I think is wrong. And I think the Supreme Court decision in the Jack Daniels case makes clear that the Rogers test shouldn't limit what we're talking about in this case. And you did in two minutes. Very well, counsel. All right. Thank you very much. Thank you both counsel for your argument and supplemental briefing this case. This particular panel is adjourned, but the other panel will be back for court tomorrow at 930 for regular scheduled broadcasting. Thank you. Thank you.
judges: OWENS, BRESS, Fitzwater